IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SCOTT R. BISHOP and KELLENE E. BISHOP,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.; BAC HOME LOANS SERVICING, L.P.; WILSHIRE CREDIT CORPORATION; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; DAVID B. BOYCE, PLLC; and DOES 1-10,<br><br>Defendants. | REPORT AND RECOMMENDATION<br><br><br>Case No. 2:11-cv-780-DB-PMW<br><br><br><br><br>District Judge Dee Benson<br><br>Magistrate Judge Paul M. Warner |

District Judge Dee Benson referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1] Before the court are David B. Boyce, PLLC ("Boyce"); Bank of America, N.A. ("BANA"), individually and as successor by merger to BAC Home Loans Servicing, LP ("BAC"); and Mortgage Electronic Registration Systems, Inc.'s ("MERS") (collectively, "Defendants") motions to dismiss;[2] and Scott R. Bishop and Kellene E. Bishop's ("Mrs. Bishop") (collectively, "Plaintiffs") motion for a hearing on those motions to dismiss.[3]

---

[1] *See* docket no. 27.

[2] *See* docket nos. 7, 20.

[3] *See* docket no. 30.

At the outset, the court addresses Plaintiffs' motion for a hearing. The court has carefully reviewed the written memoranda submitted by the parties on the above-referenced motions to dismiss. Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court concludes that oral argument on the motions would not be helpful and, therefore, is not necessary. *See* DUCivR 7-1(f). Accordingly, Plaintiffs' motion for a hearing on the motions to dismiss should be denied.

## BACKGROUND

On or about March 17, 2006, Mrs. Bishop executed an adjustable rate note ("Note"), which listed Fieldstone Mortgage Company as the lender. Mrs. Bishop agreed that, in return for the loan she received, she promised to repay $250,000 and that she would make all payments under the Note. A provision of the Note indicated that Plaintiff understood that the lender may transfer the Note.

Also on or about March 17, 2006, Mrs. Bishop executed a deed of trust ("Trust Deed"), which named Fieldstone Mortgage Company as the lender. The Trust Deed listed MERS, and its successors and assigns, as the beneficiary. The Trust Deed also stated MERS was "acting solely as a nominee for Lender and Lender's successors and assigns."[4] In the Trust Deed, Plaintiff agreed that "if necessary to comply with law or custom, MERS . . . has the right: to exercise any or all of those interests, including but not limited to, the right to foreclose and sell the Property;

---

[4] Docket no. 2, Exhibit 1, Part 2.

and to take any action required of Lender."[5]  Plaintiff also agreed that successor trustees could be appointed, and that, in the event of a default, "Lender at its option may require immediate payment in full of all sums secured by [Trust Deed] without further demand and may invoke the power of sale and other remedies permitted by applicable law."[6]  Plaintiff further agreed that "[i]f the power of sale is invoked, [the trustee] shall execute a written notice of the occurrence of an event of default and of the election to cause the Property to be sold and shall record such notice in each county in which any part of the Property is located."[7]  In addition, the Trust Deed provides that

> [t]he Note, or a partial interest in the [N]ote (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments . . . and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.[8]

In the summer of 2006, Wilshire Credit Corporation became the servicer under the Note Trust Deed, while MERS remained the nominal beneficiary.  In December 2008, Mrs. Bishop defaulted under the Note and, in April 2009, a notice of default and election to sell was filed by Boyce as trustee.  On May 19, 2009, MERS assigned the beneficial interests under the deed of trust and the note to Merrill Lynch Mortgage Lending, Inc.  On May 20, 2009, Merrill Lynch

---

[5] *Id*.

[6] *Id*.

[7] *Id*.

[8] *Id*.

Mortgage Lending, Inc. assigned the beneficial interests under the Trust Deed and the Note to Citibank, N.A. as trustee for MLMI Trust Series 2006-HES.  In February 2010, BAC became the servicer under the Note and Trust Deed.

On February 15, 2011, Plaintiffs mailed a purported Qualified Written Request ("QWR"), as defined by the Real Estate Settlement Procedures Act ("RESPA"), to BANA.  The purported QWR was five pages and contained over thirty-five multi-part questions.  On March 14, 2011, BANA responded, identifying the owner of the loan for whom BAC was acting as servicer, LaSalle, and providing other pertinent information relating to the loan.  On April 4, 2011, Plaintiffs mailed another purported QWR to LaSalle.  This QWR was three pages, contained over twelve multi-part questions and sought a large volume of information related to the securitization of Mrs. Bishop's loan, including prospectuses; servicing agreements; and names, addresses, and telephone numbers of trustees, servicers, and subservicers.  On April 26, 2011, BANA provided a written response.

In July 2011, BANA sent a letter to Plaintiffs providing notice that BANA was the new servicer under the Note and Trust Deed.  Also in July 2011, Plaintiffs were served with a notice of trustee sale.  Soon thereafter, Plaintiffs initiated this case in state court.  On August 29, 2011, the case was removed to this court.

## LEGAL STANDARD

The motions to dismiss before the court seek dismissal of Plaintiffs' complaint under rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss under rule 12(b)(6), the court "accept[s] all well-pleaded facts as true and

view[s] them in the light most favorable to the plaintiff." *Jordan-Arapahoe, LLP v. Bd. of County Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011). At the same time, the court is not required to accept conclusory allegations without supporting facts. *See Bellmon*, 935 F.2d at 1110.

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), the United States Supreme Court recognized that while the pleading standard contained in rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,'" it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 1949 (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)).

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Id*. (quoting *Twombly*, 550 U.S. at 555, 557, 570) (alteration in original).

The *Iqbal* Court went on to note:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the

> doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not show[n]--that the pleader is entitled to relief.

*Id*. at 1949-50 (quotations and citations omitted) (second alteration in original).

## ANALYSIS

Before reaching the specific causes of action in Plaintiffs' complaint, the court addresses an overarching argument made by Plaintiffs throughout their complaint.  Plaintiffs assert that "this entire case hangs on the fundamental question of who owns the '[d]ebt.'"[9]  More specifically, Plaintiffs argue that there is a dispute about who owns the debt in this case and, therefore, Defendants have not adequately proven their authority to foreclose.  For the following reasons, the court concludes that Plaintiffs' overarching argument is without merit.

First, Plaintiffs have not identified a specific party who may have a claim to the debt, nor have they identified any basis for their belief that there is some dispute about who owns that debt.  Instead, Plaintiffs have provided only conclusory allegations to support their argument, which the court is not required to accept when considering a motion to dismiss.  *See id*.

Second, Plaintiffs' underlying argument that Defendants are required to demonstrate their authority to foreclose at every step of the foreclosure process has been repeatedly rejected by this

---

[9] Docket no. 2, Exhibit 1, Part 1.

court. *See, e.g.*, *Hoverman v. CitiMortgage, Inc.*, No. 2:11-cv-00118-DAK, 2011 U.S. Dist. LEXIS 86968, at *16-17 (D. Utah Aug. 4, 2011) ("[A trustee] does not have a statutory duty to disclose its authority to foreclose because the statute governing non-judicial foreclosure in Utah does not contain any requirement that the trustee demonstrate his or her authority in order to foreclose. The court declines to create a requirement where the legislature chose not to include one. Therefore, the court holds that, under the terms of the relevant documents and the current statute, [a trustee] is not required to demonstrate its authority to foreclose before initiating a foreclosure proceeding." (citing Utah Code § 57-1-19 *et seq.*) (other citation omitted)); *see also Marty v. Mortg. Electronic Registration Sys.*, No. 1:10-cv-00033-CW, 2010 U.S. Dist. LEXIS 111209, at *18 n. 42 (D. Utah Oct. 19, 2010)

Third and finally, the court sees no meaningful distinction between Plaintiffs' argument about the owner of the debt and the "show me the note" theory of recovery that has been repeatedly rejected by this court. *See, e.g.*, *Aparicio v. Wells Fargo Bank, N.A.*, No. 2:11-cv-00495, 2011 U.S. Dist. LEXIS 128235, at *15-16 & n. 55 (D. Utah Oct. 17, 2011); *Marty*, 2010 U.S. Dist. LEXIS 111209, at *18 n. 42.

The court now addresses the specific causes of action in Plaintiffs' complaint. The complaint contains the following seven causes of action: (1) breach of the duty of good faith and fair dealing, (2) quiet title, (3) intentional and negligent infliction of emotional distress, (4) violation of RESPA, (5) violation of the Fair Debt Collection Practices Act ("FDCPA"), (6) wrongful lien, and (7) declaratory judgment. The court will address those causes of action in turn.

### I. Duty of Good Faith and Fair Dealing

This claim is based on the argument that Defendants violated the covenant of good faith and fair dealing, which, according to Plaintiffs, exists both in contract and in tort, by foreclosing under the Trust Deed. For the following reasons, these claims fail.

First, Utah does not recognize a claim for breach of the covenant of good faith and fair dealing sounding purely in tort. *See, e.g.*, *MacArthur v. San Juan County*, 416 F. Supp. 2d 1098, 1190 (D. Utah June 13, 2005); *Savage v. Educators Ins. Co.*, 908 P.2d 862, 865-66 (Utah 1995); *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 798-800 (Utah 1985). Accordingly, Plaintiffs' tort claim for breach of the covenant of good faith and fair dealing fails.

Second, to the extent Plaintiffs' claim is a contractual one, it also fails. A claim for breach of the duty of good faith and fair dealing arises when one party to an agreement impedes the other party's ability to perform and benefits from the nonperformance. *See Zion's Properties, Inc. v. Holt*, 538 P.2d 1319, 1321 (Utah 1975). As this court has repeatedly held, this theory does nothing to aid plaintiffs in default on their contractual loan obligations. *See, e.g.*, *Rogers v. Am. Brokers Conduit*, No. 2:09-cv-715-TS, 2009 U.S. Dist. LEXIS 99745, at *14 (D. Utah Oct. 26, 2009); *Swenson v. Nat'l City Mortgage Co.*, No. 2:08-cv-659-TS, 2009 U.S. Dist. LEXIS 23091, at *11 (D. Utah Mar. 23, 2009). Furthermore, Plaintiffs' claim also fails because the implied covenant of good faith and fair dealing cannot override express terms that are central to the agreement. *See Peterson v. Browning*, 832 P.2d 1280, 1284 (Utah 1992) ("The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose."

(quotations and citation omitted)). A claim for breach of the duty of good faith and fair dealing is a claim for breach of contract and has "no independent existence outside of the contract." *Peterson & Simpson v. IHC Health Servs., Inc.*, 217 P.3d 716, 722 (Utah 2009). The covenant "cannot be construed . . . to establish new, independent rights or duties not agreed upon by the parties." *Sanderson v. First Sec. Leasing Co.*, 844 P.2d 303, 308 (Utah 1992) (alteration in original) (quotations and citation omitted). Because Defendants complied with terms specifically agreed to in the Note and Trust Deed, which govern the conduct about which Plaintiffs complain, Plaintiffs have no basis for this cause of action.

## II. Quiet Title

Defendants argue that Plaintiffs' claim for quiet title must fail because Plaintiffs concede that they have defaulted, and thus the claim does not assert the strength of Plaintiffs' claim to title, but instead merely hypothesizes that there may be flaws with Defendants' title. The court agrees.

A quiet title action is an equitable "suit brought to quiet an *existing* title against an adverse or hostile claim of another, and the effect of a decree quieting title is not to *vest* title but rather is to *perfect* an existing title as against other claimants." *Nolan v. Hoopiiaina (In re Hoopiiaina Trust)*, 144 P.3d 1129, 1137 (Utah 2006) (quotations and citation omitted). "To succeed in an action to quiet title to real estate, a plaintiff must prevail on the strength of his own claim to title and not on the weakness of a defendant's title or even its total lack of title." *Collard v. Nagle Constr.*, 57 P.3d 603, 607 (Utah Ct. App. 2002) (quotations and citation omitted).

In this case, Plaintiffs do not assert that they have a superior claim to title; instead, they merely attack Defendants' claim of title, which is not a sufficient basis for a quiet title claim. *See id*. Furthermore, Plaintiffs have conceded that they have defaulted, which clouds Plaintiffs' claim to title. For these reasons, Plaintiffs' quiet title claim fails.

### III. Infliction of Emotional Distress

Plaintiffs have alleged claims for both intentional and negligent infliction of emotional distress. Defendants argue that both of those claims are without merit. Again, the court agrees.

> In order to properly state a claim for the tort of intentional infliction of emotional distress, a plaintiff must plead facts that demonstrate that the defendant intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; *and* his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.

*Oman v. Davis Sch. Dist.*, 194 P.3d 956, 969 (Utah 2008) (quotations and citation omitted). "To be considered outrageous, the conduct must evoke outrage or revulsion; it must be more than unreasonable, unkind, or unfair." *Id*. (quotations and citation omitted).

In this case, Plaintiffs have failed to allege any actions of Defendants that rise to the level of conduct described above. As noted by Defendants, foreclosing under the Trust Deed was not outrageous or intolerable conduct, and such conduct is not even unreasonable, unkind, or unfair. It is simply the natural consequence of Plaintiffs' default. Defendants acted within their legal rights, and in accordance with rights expressly granted by the Note and Trust Deed. Furthermore, Plaintiffs have failed to include any well-pleaded factual allegations demonstrating that

Defendants actions were intentionally undertaken to cause emotional distress or that Defendants should have known that their actions were outrageous and intolerable.  *See id*.  Instead, Plaintiffs' supporting allegations are nothing more than conclusions.  *See Osmond v. Litton Loan Servicing, LLC*, No. 1:10-cv-11, 2011 U.S. Dist. LEXIS 54659, at 13 (D. Utah May 20, 2011) ("Merely pleading a conclusion does not allow an [intentional infliction of emotional distress] claim to survive a motion to dismiss: the pleading must contain facts that would support that conclusion.").  For these reasons, Plaintiffs' claim for intentional infliction of emotional distress fails.

The court turns next to Plaintiffs' claim for negligent infliction of emotional distress.  To state such a claim,

> the plaintiff must allege that the defendant should have realized that his actions would create an unreasonable risk of the emotional distress and that the distress might result in illness or bodily harm. In order to sustain a claim, the plaintiff must allege that the distress has caused a situation with which a reasonable person, normally constituted, could not cope.  Stress, anxiety, and depression occur in daily life, and these symptoms are insufficient to support an [negligent infliction of emotional distress] claim.

*Osmond*, 2011 U.S. Dist. LEXIS 54659, at *10 (footnotes omitted) (citing *Harnicher v. Univ. of Utah Med. Ctr*, 962 P.2d 67, 69, 72 (Utah 1998); *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 975 (Utah 1993)).

Plaintiffs have failed to allege the type of emotional distress to meet that standard.  Instead, Plaintiffs have included only conclusory allegations that they have suffered emotional distress, anxiety, and stress.  "Unsubstantiated, conclusory allegations of severe emotional

distress are insufficient to state a claim for [negligent infliction of emotional distress]." *Id*. (citing *Hansen*, 858 P.2d at 975).  Accordingly, Plaintiffs' claim for negligent infliction of emotional distress likewise fails.

### IV.  RESPA

With respect to Plaintiffs' claim under RESPA, Defendants argue that Plaintiffs' communications with BANA and LaSalle were not QWRs.  Defendants also argue that even if Plaintiffs' communications could be construed as QWRs, Plaintiffs have failed to make adequate allegations concerning damages to succeed on their RESPA claim.  The court will address those arguments in turn.

Defendants first argue that Plaintiffs' communications were not QWRs.  A QWR must be a written correspondence that

> includes, or otherwise enables the servicer to identify, the name and account of the borrower; and . . . includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(l)(B)(i)-(ii).  While Plaintiff identifies some communications with Defendants that they claims were QWRs, they do not allege that they ever sent any communications that fit within the above-referenced definition.  Plaintiffs do not allege that they ever sent a statement of reasons or a detailed accounting to Defendants to prove that they were current on their account or that the account was in error.  Accordingly, the court agrees with Defendants' assertion that Plaintiffs' communications were not QWRs.

Second, Defendants argue that even if Plaintiffs' communications could be construed as QWRs, Plaintiffs have failed to make adequate allegations concerning damages to succeed on their RESPA claim.  The court agrees.  Plaintiffs fail to allege how Defendants' actions caused any actual damages.  *See* 12 U.S.C. § 2605(f)(1)(A).  As this court has previously explained, "RESPA requires borrowers to show actual damages as a result of a failure to comply with its provisions."  *Rodeback v. Utah Fin.*, No. 1:09-cv-00134-TC, 2010 U.S. Dist. LEXIS 69821, at *7 (D. Utah July 13, 2010).  Further, even if Plaintiffs had alleged actual damages, they would still need to demonstrate "a causal link between any damages and the alleged RESPA violation" in order to survive a motion to dismiss.  *King v. Am. Mortgage Network, Inc.*, 1:09-cv-162-DAK, 2010 U.S. Dist. LEXIS 92210, at *6 (D. Utah Sept. 2, 2010); *see also Albury v. Am. West Bank*, 1:10-cv-197-TS, 2011 U.S. Dist. LEXIS 27083, at *5 (D. Utah Mar. 15, 2011) ("Even if Defendants had not responded, Plaintiff has failed to present any allegations demonstrating a causal link between any damages and the alleged RESPA violations.").  Plaintiffs have failed to do so.  Based on the foregoing, the court concludes that Plaintiffs' RESPA claim fails as a matter of law.

### V.  FDCPA

As noted by Defendants, to support their FDCPA claim, Plaintiffs appear to allege that the entire non-judicial foreclosure process violates the FDCPA because Defendants do not have or did not have ownership of the loan at issue, the authority to make such a determination, or the authority to foreclose on Plaintiffs' property.  This court has already addressed and rejected that overarching argument above.  Even putting that aside, Plaintiffs' FDCPA claim must fail as a

matter of law.  This court has held numerous times that FDCPA claims in this context must fail. *See, e.g.*, *Van Leeuwen v. SIB Mortg. Corp.*, 2:10-cv-730-TS, 2011 U.S. Dist. LEXIS 885, at *1-2 (D. Utah Jan. 4, 2011); *Burnett v. Mortg. Elec. Registration Sys.*, No. 1:09-cv-00069-DAK, 2009 U.S. Dist. LEXIS, at * 3-11 (D. Utah Oct. 27, 2009).  For these reasons, the court concludes that Plaintiffs' FDCPA claim is without merit.

## VI.  Wrongful Lien

Plaintiffs' wrongful lien claims are based upon the overarching argument that the court addressed above.  Again, the court has rejected that argument and, accordingly, Plaintiffs' wrongful lien claims should be dismissed.

## VII.  Declaratory Judgment

Plaintiffs have asserted "claims" for declaratory judgment on several topics.  "[R]equests for declaratory . . . relief are actually remedies for other alleged causes of action and do not qualify as causes of action on their own." *Hoverman*, 2011 U.S. Dist. LEXIS 86968, at *27. Because the court has concluded that all of Plaintiffs' causes of action fail, Plaintiffs are not entitled to declaratory relief on any of those causes of action.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, **IT IS HEREBY RECOMMENDED THAT:**

1. Plaintiff's motion for a hearing[10] be **DENIED**.

---

[10] *See* docket no. 30.

14

2.	Defendants' motions to dismiss[11] be **GRANTED**.

3.	Plaintiff's complaint in this case be **DISMISSED WITH PREJUDICE**.

\* \* \* \* \*

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days after receiving it. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute waiver of objections upon subsequent review.

DATED this 16th day of April, 2012.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[11] See docket nos. 7, 20.